### PETER BENOIT *vs.* INHABITANTS OF CONWAY.

If the inhabitants of a town have by vote authorized their treasurer to borrow money for the adjustment of a state tax for the reimbursement of bounties to volunteers, and the tax has been adjusted without the necessity of borrowing money, his authority to borrow money under that vote thereupon ceases.

If a town treasurer without authority borrows money on the credit of the town, and gives his note as treasurer, and mingles the money with his own private funds, by depositing the same to his own credit in a bank where he keeps an account in his own name, and uses the whole fund indiscriminately for the payment of his own debts and the debts of the town, so that the borrowed money cannot be specifically traced as having been applied in payment of the debts of the town, the lender cannot maintain an action against the town for money had and received.

Authority in a town treasurer to borrow money on the credit of the town cannot be established by proof of a long continued practice of the town, by their treasurer, to borrow money and give and pay notes therefor, without any votes of the town, and at the end of each year to report to the town a list of the amounts borrowed and of the notes given and paid, and of the acceptance of such reports by the town; there being no such report of the borrowing of the money in controversy.

CONTRACT, brought against the inhabitants of Conway to recover the amount of the following promissory note : " Conway, February 6, 1864. $2075. On demand, for value received, I, G. Edgerton, town treasurer, for myself or my successor in said office, promise to pay Peter Benoit or order two thousand and seventy-five dollars, with interest. G. Edgerton, Town Treasurer." There was also a count for $2075, money had and received.

At the trial in the superior court, before *Rockwell*, J., the plaintiff called the present clerk and treasurer of Conway, who produced the town records, which contained the following votes passed August 3d 1863 : " Voted, that the town adjust and pay

its tax required under the law to provide for reimbursement of bounties paid to volunteers, &c., approved April 29, 1863, as provided in section 9 of said law.   Voted, that the town treasurer be authorized to borrow such sums of money as may be necessary for the adjustment of said tax, under the provisions of said law."   The witness testified that Edgerton was town treasurer at the date of the note, and in March 1864 paid over to the witness, as successor to Edgerton, $3000; that no money was borrowed under the above vote, and none was necessary, the bounties having been adjusted with the state in December 1863; and that Edgerton was largely indebted to the town. The plaintiff also called Edgerton, who testified that he borrowed the money, and the town had it, and he gave the note as town treasurer; that he deposited the money received from the plaintiff in the Conway Bank, having added some more to it; that his account at the bank embraced the moneys of the town; that he then had money in the bank; that after paying such town orders as came in, he paid the balance remaining to the town officers; that he did not know as this money was borrowed particularly or expressly under that vote; could not say he had the vote in mind; that during that municipal year he borrowed several thousand dollars, as the records would show; and that he could not say that, in his transactions of borrowing money generally after that vote, he did it in pursuance of authority derived from that vote.   On cross-examination, he testified that the tax was settled between the town and the state in November or December 1863; that he kept his bank account in his own name, and kept no bank account in his name as treasurer; that his bank account included his own account; that he had occasionally a little money of his own; did not keep it separate; his own money and the town money were blended in the account, and he could not tell how much of the deposit account was his own money, and how much belonged to the town; there was no distinction in deposits or checks, in the bank account, between his private money and money of the town; and the payments made to the town officers did not settle his account with the town. On reëxamination he testified that he considered the bank

account as the town's money, and that it was kept by him as the town account with the bank; though he could not say but some of it was his individual money.

The defendants put in evidence Edgerton's bank book, which showed a balance to his credit of $1954.52, prior to the deposit of the money received from the plaintiff. There were several other items upon both sides of this account, some of which Edgerton recollected, and of others he had no particular recollection, either of the sources from which the money came, or of the purposes to which the money drawn out on checks was applied.

The plaintiff offered to prove that for twenty years or more the practice of the defendants had been to borrow money, through their treasurer, of the bank and individuals, and give and pay notes by him, without any votes of the town, and at the end of each year to report to the town a list of the amounts borrowed, and of the notes given and paid, which reports were accepted by votes of the town; and that for the year ending in March 1864 such a report, giving the names of individuals of whom money was borrowed, and to whom notes were given and paid, was made by the treasurer to the town, and accepted by a vote of the town; and that, though the note now in suit was not included in this report, it should have been, and was omitted purely by mistake. This evidence was excluded.

The plaintiff thereupon rested his case, and the judge directed a verdict for the defendants, which was returned accordingly; and the plaintiff alleged exceptions.

*E. D. Beach,* ( *G. M. Stearns* with him,) for the plaintiff. The treasurer's authority to borrow money under the vote did not necessarily terminate with the adjustment of the tax in December 1863. The object of the vote was to meet the demand of the state by loans to be carried to the next season. The defendants are liable on the count for money had and received. *Brown* v. *Harris,* 2 Gray, 359. *Melledge* v. *Boston Iron Co.* 5 Cush. 170. *Dill* v. *Wareham,* 7 Met. 447. Depositing the town's money in Edgerton's name was not such a mingling as to leave the ownership doubtful. The evidence offered showed that

Edgerton had been held out as agent of the town, with au-thority to borrow money.

*G. T. Davis & C. Allen*, for the defendants, cited *Lowell Five Cents Savings Bank* v. *Winchester*, 8 Allen, 109; *Thayer* v. *Boston*, 19 Pick. 511; *Le Breton* v. *Peirce*, 2 Allen, 8; *Atlantic Bank* v. *Merchants' Bank*, 10 Gray, 560; *Lime Rock Bank* v. *Plimpton*, 17 Pick. 161; *Mason* v. *Waite*, 17 Mass. 560.

BIGELOW, C. J.   The evidence was insufficient to charge the defendants on the note declared on.

1. The money was not in fact borrowed under the authority of the vote.   Edgerton so testified; nor could it have been, inas-much as the necessity for the loan contemplated by the terms of the vote did not arise.   No money was required by the town for the reimbursement of bounties paid to volunteers.

2. It does not appear that the money borrowed of the plaintiff, or any part of it, went to the use of the town.   On the con-trary, it was mingled with the private funds of the treasurer, and the evidence shows that it may have been used to pay his individual debts.

3. The evidence of usage was immaterial.   It did not show that the town had ever sanctioned by their votes the borrowing of money in their name and on their credit by the treasurer, which did not go to the use of the town, but which was min-gled with the treasurer's private funds and the appropriation of which for the use of the town did not appear.   Besides; the usage went no farther than to show that the town, on the rendi-tion of the treasurer's annual account, was accustomed to give its sanction to acts of the treasurer in borrowing money and giving and paying notes in behalf of the town during the year previous.   This did not prove any authority in the treasurer to give notes binding on the town, but only a usage to sanction his acts in managing the financial concerns of the town, if, on hear-ing his statement at the end of the year, they met with approval. No such sanction was given to the transaction with the plain-tiff, by which he obtained the note declared on ; nor was the town bound by their previous usage to acknowledge the validity of the note.                     *Exceptions overruled.*